Good afternoon. Sorry to keep you waiting for a few moments. We'll call the case of Joe Ancelin. May it please the court. My name is Joe Ancelin. I represent the appellant for Spotticella. Your Honor, may I reserve two minutes for rebuttal, please? You may. Thank you. This case concerns an extraordinary... Excuse me, sir. You're with a Schneider firm? I am, Your Honor. Because you're not on the brief. Okay. Thank you. Sure. This case concerns an extraordinary injunction that rather than preventing the use of trade secrets, restrains an individual's right to take on the job of his choice. These injunctions are available in only the narrowest circumstances because they hamper employee mobility, reduce competition, and eliminate the need for freely bargained restrictive covenants. In entering such an injunction here, the district court erred as a matter of law. This court in Victaulic has set forth the relevant standards. The usual injunction in a trade secrets case prohibits only the use of trade secrets. Spotticella has agreed to stipulate to such an injunction here. A broader injunction, like the one the district court issued in this case, is available only when it would be virtually impossible for the employee to perform his duties for his new employer without disclosing those trade secrets. Here, the district court improperly lowered the applicable standard from virtually impossible as required by Victaulic is substantially likely. This error was critical. The virtual impossibility standard requires a close comparison. Can you cite to us the Pennsylvania State case announcing that the Pennsylvania Superior Court of Supreme Court of Common Law applies the inevitable disclosure? Your Honor, the Pennsylvania courts have never formally adopted the inevitable disclosure doctrine. In air products, the court affirmed a trial court decision that did apply the doctrine, but was careful to say. It's an area of state law. That's correct, Your Honor. But this court in Victaulic has seemingly recognized the doctrine, stating that an injunction that prevents an employee from taking on the employment of his choice is available only when it's virtually impossible for. And what was our basis for doing so? From what source substantively did we derive doctrinally the basis to create that inevitability test? Your Honor, the court cited and quoted the air products case, the Pennsylvania Superior Court case. It has sometimes been stated that it applied the inevitable disclosure doctrine. So while it's not clear that the doctrine applies in any shape or form, this court has recognized it in the past. And Your Honor, if the doctrine does not apply, that actually helps Mr. Botticella because it was the inevitable disclosure doctrine that the district court relied on in entering the injunction. Typically, only use injunctions are permissible in trade secret cases. So without the inevitable disclosure doctrine, the injunction here cannot lie. The other error that the district court made was applying the inevitable disclosure doctrine both to technical trade secrets and commercial trade secrets. Again, this is an issue that the Pennsylvania Superior Court has dealt with. Two cases. Excuse me, can I return you to what you just indicated about the district court's decision in the case relative to inevitability? And I believe what you said was, well, even if that isn't good law effectively, that helps Mr. Botticella. But what Judge Surik said is we are compelled to conclude that the evidence demonstrates a substantial likelihood, if not an inevitability. So you really use that only as a secondary alternative. Your Honor, as we understand the case based on the judge's citation to air products and other cases, he was purporting to apply the inevitable disclosure doctrine, but he erroneously lowered the standard to substantial likelihood. The substantial likelihood standard is appropriate if the district court were just entering a use injunction that prohibited the employee from using the trade secrets. This broader injunction that prohibits the employee from taking the position is available only in inevitable disclosure cases. Well, should we remain the matter for him to reconsider it then, and to determine whether or not it would meet this enhanced standard? Your Honor, that would be appropriate. We also believe that on the record that was before the district court, there was no basis for him to conclude that under the appropriate standard, it was inevitable that Botticella would disclose the trade secrets. Let me be, I guess, blunt. My view of having read the district court's findings of fact and conclusions of law, Judge Surik just flat out did not believe. He pointed to numerous credibility problems. How does Mr. Botticella win in what here is essentially an equity proceeding, preliminary injunction proceeding, regardless of the test? Your Honor, in the typical trade secrets case that proceeds under the Pennsylvania Uniform Trade Secrets Act, the appropriate injunction is the use injunction I've been referring to. And in these cases, these cases almost inevitably involve instances of employee misconduct. The statute provides that the district, that the courts may enjoin misappropriation of trade secrets. And the use of the word misappropriation implies some kind of misconduct or dishonesty. So the fact that the district court here concluded that Mr. Botticella had acted improperly does not justify the broad injunction of the district. Let me ask you this question. I don't even, I'm not asking for an answer to the initial observation, but I cannot concede that if before he took this position, he determined he would stay with his old employer, that if he had gone to your firm and asked him about that, he would have said, yeah, do that. Because the lawyer would tell them to do that, so he ought to have his ticket lifted. I mean, it would really, no lawyer would tell him to do that, you know that. So, but the question is this thing. Wasn't there an element of real dishonesty there in keeping his mouth shut about the fact that he was continuing in this high-level position with all this knowledge, but maintaining the competitor? Your Honor, it probably wasn't the wisest course for Botticella to follow in making this decision. I know, I know why he said he did it. As you suggested, there's something reasonable as far as human nature is concerned for an employee to want to stick around the extra two months to get his year-end bonus. I don't think that that conduct is beyond the pale and shows that this extreme injunction is necessary here. Let me ask you this question that I've been musing over this. The district court, in its order, provided for a trial to start in two months on the merits, August, April 12th this year. So the court didn't say this was a two-month injunction, but that's what the court obviously contemplated. But that didn't happen because of the appeal. Sometimes, you know, these things are combined. The application for a preliminary injunction combined with a final, that didn't happen. But it was a two-month injunction. Does that make a difference? Because the truth of the matter is, right now, even if we just said, yeah, we agree, we affirm, bang, it's all we said, you could still go in and move the district court to modify it because it continued longer than the court had contemplated. And, I mean, does that make a difference? It was only a two-month injunction. Plus, I think you were getting paid, weren't you, during the two months? The client was getting paid. Mr. Bonicello was collecting some payment for vacation time, which, you know, wasn't necessarily what he contemplated using that money for, but he has been receiving it. Your Honor, the reason that we took... So the harm to him was, if the judge would have seen it, the harm to him would be mitigated because he would have had an income. Your Honor, the harm is mitigated in that respect, but in these employment contexts, even a limited injunction can be exceedingly severe because, given the competition for jobs, you know, in this day and age, there's no reason for hostess to wait around for Mr. Bonicello to let this injunction play out. It's much easier for hostess just to look for a new employee. And that's why, in these employment and trade cases, even if the injunctions are for a limited period of time, they can have very serious consequences. Your Honor, you had asked or, I guess, referred to our decision to take the appeal rather than waiting for the process to play out. We made that decision for both legal and pragmatic reasons. The legal reason was we believed that the district court fundamentally misapplied the law. We expected that error to carry over to the permanent injunction proceedings. We thought it was advantageous to try to get it corrected at this stage. Also, pragmatically, Mr. Bonicello is funding his own defense, and when we understood the broad discovery program that BIMBO planned to undertake, it became apparent that it would be difficult for Mr. Bonicello to fund that defense. And also, we had a question of whether hostess would keep the job open for him at the cost of exposing its executives to depositions. So we appealed immediately to try to get a favorable ruling for our client. This was, as you pointed out, this was at the preliminary injunction stage. And one of the tests for whether or not the court should grant the preliminary injunction is the likelihood of success. And our standard review of that injunction is abuse of discretion, is it not? That's right, Your Honor. Isn't it awfully difficult for us to find on this record that the court couldn't find that there was a likelihood after a fuller trial that BIMBOs would succeed in stopping him from going with hostess or from just divulging the trade secret? I mean, what the court entered was, in effect, a two-month injunction, thinking that in April we're going to have the hearing on the merits, which the injunction could have been modified. So, I mean, how do we come to the conclusion that an injunction saying that BIMBO is likely to succeed was an abuse of discretion? Your Honor, this court also reviews legal decisions by the district court under a de novo standard. And it's our position that the district court applied the wrong legal standard in entering this injunction. So, if we conclude that they applied the wrong legal standard under Pennsylvania law, that would constitute abuse of discretion? That's right, Your Honor. And if the court were to conclude that, at the least, we believe the court should dissolve the injunction and remand, as Judge Greenberg suggested, or if the court would go a step further, consider the evidence in the first instance and conclude that under the proper standard, there is no likelihood that BIMBO would be able to prove by a preponderance of the evidence that it would be virtually impossible for Mr. Boticelli to perform? Well, you know, it's a funny thing because they almost have, I mean, frankly, I almost laughed out loud when after he agreed to take the job, they said you would have to read a somewhat self-serving document for him to sign. They didn't want any information. When you looked at that, you couldn't help but laugh. At least I couldn't. But the court, though, we have to view the matter, don't we, as it stood before the court. We're only reviewing the record as of that time. And as of that time, it was dealing with a very short-term injunction. Your Honor, I see my time has expired. May I? Your Honor, even though it was a short injunction, the important piece of the record is actually the absence of evidence. There's no evidence about Boticelli's job responsibilities at hostess, and thus there's no way to determine whether it would be virtually impossible. So what? He was going to be going as a major executive, wasn't he? That's right, Your Honor. What's the import really of knowing what his precise job description would be if, in fact, he was someone in an executive position with oversight over numerous other people? Your Honor, the reason this is important is because the type of injunction that the district court issued here is available only to protect technical trade secrets. That would include, in this case, information about the English muffins and the Boticelli's job requires him to be involved in the English muffin department. We'll have you back on the record. Thank you. Thank you very much. Banks? Yes, Your Honor. Good afternoon. May it please the Court, Michael Banks for Bimbo Bakeries, the appellee. Your Honor, as Judge Greenberg noted, because this is an abuse of discretion question before this Court, I won't address evidence that was not in the record below that my opponent, Mr. Anseline, alluded to, such as who's paying for the defense or whether the job would have been available at hostess. Those facts were not before the district court, so they can't be part of the abuse of discretion standard. I also, unless the panel has questions, won't spend much time with the facts because Judge Surik wrote a very lengthy set of findings accurately characterizing the facts and the record, and we also disclosed those in our brief. Sometimes people on appeal move to supplement the record with additional facts that have developed, but that didn't happen here, did it? It did not, Your Honor. So we're dealing with a situation as of the day the court ruled below. That's correct. Below is not a good word. The district court ruled. Correct. The legal question is one I would like to start with, if the Court will permit me, because I don't think there is a correct representation of Pennsylvania law made by Mr. Botticella. This trade secret theory first comes from a statute. We have the Pennsylvania Statute 5302a, which is very, very limited in its wording. It says an injunction may be entered to avoid a threatened. We look to the courts of Pennsylvania for that. As Judge Smith noted, there are several decisions from Pennsylvania law that guide us. Air product seems to be recognized as the leading case. It's a Superior Court case from the early 1980s, and this is what the Court said. This is a quote. A person may be enjoined from engaging in employment. I'll just stop there. May be enjoined from engaging in employment, and then the Court continued, or certain aspects of his employment, where that employment is likely to result in the disclosure of information held secret by a former employer. If you think about it, that's a very common sense and realistic interpretation of the statute. The statute talks about threatened misappropriation, and the case says if you show that it's likely, you may get injunctive relief. But the Court also hearkened back to language of the trial court, and the trial court had apparently used language of inevitability, or the word inevitability. But speaking only for myself, I read that to be suggesting something factual in nature in that case, not the legal theory that was being enunciated by the Superior Court, or necessarily by the trial court. If I may, Your Honor, if we ask ourselves then, how might an employer, such as Bimbo Bakery's, show a likelihood of disclosure, or to quote the statutory language, a threatened misappropriation? There are several ways. One way is the scenario of the Air Products case, and it's also the Superior Court's Baccarat decision, which is discussed in the briefs. In both of those cases, the courts went out of their way to say we have honest employees. In Baccarat, it was a rating case, and the Court really commented extensively about how these were honorable men who hadn't done anything wrong. In that circumstance, the mere presence at a new employer would not cause a threatened misappropriation absent the inevitability doctrine, an inevitable disclosure because the nature of the duties is such, and the knowledge of the employee is such, that the person could not do the job. So are you agreeing with me that that is a factual theory of how this might play out? I'm agreeing, Your Honor, that that is definitely one way, one theory, in which likelihood, or to quote statute, threatened misappropriation may be established. But no Pennsylvania court has said that's the only way. And in fact, that's why I'm suggesting it's a factual theory, that is facts which rise to meet the task of substantial threat. If we look at the A.M. Skier case, another Pennsylvania Superior Court case from 2000, about 18 years after Air Products, the A.M. Skier case, the Court noted, did not have a non-compete in it. The Court had to determine whether there was a threatened misappropriation, and then determine what relief, if any, would be appropriate. In that case, like this one, the employee took not technical information, but client information. It was an insurance business for summer camps, for the camping industry. And the guy before he left printed out about 177 documents with client information on it. And the Court looked at that and said, ah, this guy has done something bad, okay? And in that circumstance, threatened misappropriation doesn't have to accompany inevitability. It said, here, we are going to find likelihood from what he has done, and it enjoined him, using the Air Products standard of likelihood, from soliciting any of those customers. Now, of course, here, we don't have a salesperson type case, so the relief is a little bit different. We have an ingredients, a recipe, a formula, a design, a marketing guy who had all that. But the point is, Pennsylvania courts do not recognize a sole and singular factual path to proving threatened misappropriation, at least sufficient to get a preliminary injunction. And the Dentalese case is also on point. Granted, as Mr. Botticella's brief points out, that's not an employment case. But the statute that we're dealing with is not an employment statute, per se. The statute talks about misappropriation of trade secrets. In the Dentalese case, a company, Siemens, was enjoined from acquiring a competitor of the plaintiff for three years. Why? Not because of some inevitability or impossibility, but rather because it had made misrepresentations as a basis for acquiring confidential information in the context of a potential merger. And in that circumstance, the court had no difficulty taking the 5302A standard, the threatened misappropriation, and awarding injunctive relief. And Dentalese spoke in terms of a substantial likelihood. Exactly. It adopted the likelihood standard that AM Skier had and also that originally Air Products had. And in fact, Your Honors, if we just think about this again from a common sense rationale, I know we argued this in our brief, there seems to be some suggestion here that no matter how egregious the misconduct of the individual, if he is photographed walking out with the trade secret documents in his briefcase, literally hanging out of the open flap and taking them to his new employer, that unless we could demonstrate impossibility, the most the court could do is tell him, behave or else. That's not a very practical application of the rule. Because what the courts have said definitively, and they emphasized again in the Air Products case, is that to deny a plaintiff a remedy until after a disclosure has been made is to deny a remedy altogether. Mr. Banks, I'm going to ask a question that I want you to be very candid in your response on. Another way to suggest is I don't want you to be shy in your response. I'm rarely accused of that. Okay, we've been discussing the Pennsylvania jurisprudence that ought to guide us here, and that should have guided, may have guided the district court. And in your adversary's presentation, the case of Tiktaalik came up. Have we screwed up the jurisprudence in this question? Not in the least. And I think, first of all, well, when answering that, take into account what we said. I was intrigued, by the way, with the fact that in the appellant's brief, they cited that case five times, and then you never mentioned it. We probably should have, and I'm pleased to mention it now candidly and not in a shy fashion. But since you're under Pennsylvania law, we quote, a broader injunction lies only when it is, quote, virtually impossible for the employer to perform his duties for the new employee without giving effect to the benefit of his confidential information. If you look at the opinion and see what is at issue at Tiktaalik that prompted that dictum, and I'll explain why it is dictum. The Tiktaalik case involved a claim based on a non-competition agreement. It was actually first a declaratory judgment action seeking to void a contract provision, and then there was a counterclaim for enforcement. The court below, I know you don't like below, the lower court, trial court, district court dismissed that claim. And the question was, is it appealable because it's not a grant or denial of an injunction, so it doesn't fit in the immediate appellate issue given the case was not final. That was the issue before the Third Circuit. The Third Circuit noted in discussing the non-compete case, and this is on page 234 of the court's opinion, that there could have been a claim for inevitable disclosure. It says a court could fit a trade secrets claim into this case as it is possible for a court to enjoin an employee work in the relevant industry or soliciting customers for a period of time. It then goes on to say that claim isn't in this case. That's first of all why it's dictum. It wasn't a claim in the case. It's merely a discussion of whether the issue was appealable. The court then goes on to mention the inevitable disclosure theory and to talk about an inevitable disclosure claim. But Mr. Banks, Tiktaalik says flat out, under Pennsylvania law, a broader injunction only lies when it is, quote, virtually impossible for the employee, that's correct, to perform his duties for his new employer without in effect giving it the benefit of his country. But here's the key, your honor. And it cites air product. But here's the key. Yes, if you look at the next sentence. It's correct regardless. But the next sentence puts it in context. It says because Viktaalik has not alleged or argued inevitable disclosure, and then the court explains the real result is in effect the denial of an injunction. What the court was discussing there was an inevitable disclosure theory under air product. It did not discuss this other path by which one might establish a threatened misappropriation. So in response, Judge Smith, to your question, did we, I forget if you said messed it up or something like that, screwed it The court, I think, had a sentence that went a little further than certainly it needed to go and certainly further than the holding in the case. But that's not an inapt description of the core inevitable disclosure theory that air product announced. Mind you, in Viktaalik, we did not have the evidence as in Dentalese or AM Skier, which brings in this whole different fact pattern of whether the defendant, the accused, misappropriated trade secrets and acted very, very badly. So the court there was looking at might there be an injunction absent evidence of misconduct. Was its language perfect? No. But the scenario it addressed, I think it appropriately described the inevitable disclosure. Did the district court stay discovery pending this appeal or the parties just not engaged in it? Judge Greenberg, the parties, when the district court, I'm trying to remember how this came down. I want to be accurate. I think both sides agreed to stay discovery pending the appeal, I believe. But there has been no discovery pending appeal. Well, there was expedited discovery, but during the appellate process, that's right. I think it was suggested by Mr. Botticella that proceedings be stayed pending the appeal, and we did not discover it was before the injunction. That's correct. We had a very brief period, 10 days or so, two weeks, in which we took a limited deposition of Mr. Botticella, not as fulsome as we would like. We didn't have all the forensics back yet. We had some. But if at the next stage of this case, frankly, whether this court affirms or denies the injunction or affirms or reverses or remands, there will be another stage and there will ultimately be a trial. If we just affirm, say, look, he can make a motion if he wants to vacate the district court because it's already gone further than the court contemplated, where there may be a different result of the trial, that would be appropriate for us to say that. Well, yes, because, and that really is, and I can't remember which of the members of the panel noted this, but it is critical to emphasize. I know, Judge Greenberg, you pointed out a two-month injunction. It's not just that it's two months, it's that it's preliminary. The court will have to decide, ultimately, whether a permanent injunction is warranted and whether that permanent injunction enjoins him from working, keeps him in certain portions of the business, puts a time cap on it. Those were issues the court didn't have to face. What the court did here, the district court, Judge Sarek did, was he said, this is what I believe is necessary to protect bakeries based on what I've seen until two months from now. But what are you asking for? I mean, what were you asking for in a district court? And if you had had your hearing on the final injunction or on the permanent injunction, what scope of injunction would you be asking for? If the discovery revealed what we think it would reveal. Well, you know what it revealed already. Well, but we don't have everything yet. For example, and I know this isn't in the records, I'm not going to argue from it, but we're waiting to inspect his home computer to see whatever happened to that third missing USB device. We may find more. We may find that he sent things to other people. All right, let's assume he has that device in his briefcase and you just haven't looked in the right briefcase. On the record now, we believe that he should be enjoined permanently from working for Hostess, given his knowledge and his knowledge of trade for a period of time and the propensities that he's shown. Now, Judge Surik might not agree, and they certainly have an opportunity. So it's a bit disingenuous then for you to argue, well, you know, this may end up with a more narrow injunction. No, I submit not because there are many times I've argued for things that I've not gotten. It would be up to Judge Surik to decide what's the appropriate permanent relief, if any, based on a more developed record. We're just not there. I will ask for a permit. Understood, but you're not standing here today willing to agree or haven't agreed that a more narrow injunction might be appropriate. If, well, it's a hard question to answer. If it could be established that he could be at a trial, cabined off from certain parts of the business, that his job could be very limited, and that there are protections for monitoring, perhaps, Judge Fischer, that is something that would be palatable. Based on what we now know from the record we've seen, we have no indication of that. Thank you, members of the panel. Thank you very much. I just want to tell you, Mr. Banks, I used to argue for things I The first concerns the Victaulic case. The statements in that case are not dicta. They were necessary for the court to determine whether it had jurisdiction, and thus essential to the court's holding. In that case, don't they find this, don't they? Because under our, that's an interesting question, under our internal operating procedures, if there are, find a holding in a panel of this state and federal law, and this court's expounding it, finds a subsequent panel. Your Honor, that's why, as you pointed out, we cited that case five times in our brief. You cited your required brief. That's, that's right. We believe that that case sets the applicable standard here, and that the district court misapplied that standard. And my colleague, or my friend from across the aisle, pointed out that there are two tracks he mentioned. There's the air products track, and then there's the A.M. Skyer track. And we agree that these are two tracks, except we interpret the two tracks slightly differently. We think that the air products track is the only way to get this, this employment injunction, this broad injunction that prohibits the employee from taking on the job of his choice. The other track is a use injunction, and these are the two tracks that the court set out in Victaulic. The court used the word only to say that the broader injunction is only available where it would be virtually impossible, and we submit that's the relevant standard. And the second point I'd like to make very briefly is that Bimbo has just described how broad the injunction they seek is. They're essentially trying to ban Botticella from the baking industry for the rest of his career, and under the applicable case law, this is just far too broad, and it's contrary to Pennsylvania's strong views. But we, we're not concerned with that issue. I mean, that is an issue that isn't, if we're only looking at what the court did when it set the two-month injunction, that's a different issue. I mean, I, I can't conceive of an injunction that says that he can never work in the baking industry, I mean, for the rest of his life. Your Honor, may I answer? Go ahead. That, that injunction, I think, flows fairly naturally from the injunction that they've requested here and obtained at the preliminary sense. If I could, one other question. Doesn't Vitalik, is, can't the argument be made that Vitalik is not binding on us because the decision was won on as to whether or not the court had jurisdiction of the denial of the injunction? Your Honor, as, as we understand it, the jurisdictional component was a necessary threshold point for the court. It always, it always is. That, that's, that's right, and in setting the applicable standard here as virtually impossible, that drove the court's decision on jurisdiction, because if the lesser standard was appropriate to get this broad injunction, then the court very, very may well have determined that the same relief would have been available to the plaintiff. And in interpreting Pennsylvania law, we should, we should ignore what the Pennsylvania court has said and rather follow what we have said as a panel? No, Your Honor, in this Vitalik case, the court quoted the applicable languages quoting the Pennsylvania Superior Court. Well, there's some dispute as to what, that's what the Pennsylvania Superior Court has said. What if we conclude that the Pennsylvania Superior Court did not say what you're articulating? Your Honor, we, we submit that this court got it right in Vitalik because there's the initial language in our products that Mr. Banks mentioned, but that was a preliminary statement. When the court got to the end of the opinion and stated we hold, that we hold language immediately followed a statement of impossibility. So you want us to follow Vitalik because it's the right outcome, not because we're bound by it as a prior panel opinion? Your Honor, I'd be happy with either option. Okay, well said. Thank you very much, Mr. Hanselman. Thank you to both of counsel. The case was very well argued. I would like to, I raise this now, I did not want to raise it at the beginning of the argument, but Judge Greenberg did ask before argument began, Hanselman, we were on the brief, you were not. He's actually on the reply brief, I saw that. But not on the, not on the blue brief, and I don't think the, the request for rescheduling in this argument came from you, did it? No, Your Honor, it came from Ms. Ainslie. All right. My, my concern on behalf of the panel is that having rescheduled for a time that was convenient to all three because we had to be in Philadelphia, there has been some inconvenience to one member of the panel. And we granted that continuance with the understanding, Ms. Ainslie, that you were going to argue the case. It would not have been granted, I can assure you, if the information had been otherwise. I understand, Your Honor. If, if Your Honor would like a response, I'm happy to respond to that. Sure. I, I had been engaged in Bucks County before Judge Mellon on a preliminary injunction hearing. I was going to be out of the, I was going to be out of the country on the 20th, that was when I, I passed through it. And there was a preliminary injunction hearing scheduled for Bucks County. I was needed, and that case was removed. The group now has that case. It's in the process of being demanded. But as it turned out, I was available today, but not available on the 20th. And in the meantime, the counselors had prepared, and so I, I, I apologize for having confused the court. And I do appreciate very much the flexibility that you've shown. Whatever counsel's panel request, I'm grateful. Thank you. Thank you for the explanation, Ms. Ainslie. Thank you very much, counsel. We'll take the case under advisory. Thank you, Your Honor. Thank you.